# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:19-cv-00135-FDW

| | |
|---|---|
| MATTHEW JAMES GRIFFIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| ERIC A. HOOKS, et al., ) | |
| ) | |
| Defendants. ) | |
| ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983. [Doc. 1]. See 28 U.S.C. §§ 1915(e)(2); 1915A. The Plaintiff is proceeding in forma pauperis. [Doc. 2, 7].

## I. BACKGROUND

Pro se Plaintiff Matthew James Griffin ("Plaintiff") is currently a New Mexico state inmate of the Penitentiary of New Mexico located in Sante Fe, New Mexico. Plaintiff filed this action on March 20, 2019, pursuant to 42 U.S.C. § 1983. [Doc. 1]. On June 5, 2019, Plaintiff filed his Second Amended Complaint. [Doc. 13]. Plaintiff claims that Defendants violated his right to be free from cruel and unusual punishment under the Eighth Amendment. Plaintiff also states a state law claim for assault and battery and a claim under the North Carolina Tort Claims Act, N.C. Gen. Stat. § 143-291, et seq. In his Complaint, Plaintiff names the following as Defendants in this matter: (1) Eric A. Hooks, identified as the Secretary of the N.C. Department of Public Safety (NCDPS); (2) W. David Guice, identified as the Chief Deputy, Secretary of the NCDPS; (3) Kenneth E. Lassiter, identified as the Director of Prisons for the NCDPS; (4) Eric T. Dye, identified as the Assistant Superintendent at the Alexander Correctional Institution ("Alexander"); (5)

Kenneth A Beaver, identified as the Superintendent of Alexander; (6) Finesse G. Couch, identified as an Executive Director of the NCDPS; (7) Elizabeth D. Wallace, identified an investigator/examiner of the NCDPS; (8) FNU Hamilton, identified as a Captain at Alexander; (9) FNU Clifton, identified as a Correctional Lieutenant at Alexander; (10) FNU Quinn, identified as a Correctional Sergeant at Alexander; (11) FNU Clawson,[1] identified as a Correctional Officer at Alexander; (12) Does #2 and 3, identified as other unidentified officers who physically assaulted Plaintiff; (13) Does #4 through 10, identified as supervisors who allowed Plaintiff to be assaulted; (14) Does #11 through 40, identified as other individuals further described in Paragraph 55 of Plaintiff's Second Amended Complaint.

Plaintiff's allegations are extensive and can be summarized as follows:

Plaintiff is a handicapped prisoner of the State of New Mexico. [Doc. 13 at ¶ 45]. He has a diagnosed serious visual impairment. [Id.]. On December 21, 2015, Plaintiff was transferred to Alexander from his place of incarceration in New Mexico under the terms of the Interstate Corrections Company (ICC). [Doc. 13 at ¶ 29]. Defendants Hooks, Guice, Lassiter, Beaver and Dye are employees of the North Carolina Department of Public Safety (NCDPS) who, before, during and after March 21, 2017 had final policymaking authority within the NCDPS Division of Prisons and/or Alexander. [Id. at ¶ 35]. On March 21, 2017, Defendant Dye was the acting Superintendent of Alexander. [Id. at ¶ 37]. Prior to filing the Complaint, Defendant Dye was succeeded in office by Defendant Beaver. [Id.].

During the last ten years, hundreds of prisoners of the State of North Carolina have complained that they were unlawfully attacked and beaten by employees or officers of the NCDPS

---

[1] Plaintiff originally identified FNU Clawson as Doe Defendant #1. [Doc. 13 at ¶ 21; see Doc. 1]. In the Second Amended Complaint, Plaintiff identifies Clawson as Doe #1; however, thereafter, Plaintiff proceeds in referring to Clawson and Doe #1 as though they are distinct Defendants. In an attempt to effectuate Plaintiff's intent, in summarizing Plaintiff's allegations, the Court omits Plaintiff's duplicative references to Clawson and Doe #1.

while they were confided in a state prison or state correctional institution operated by the NCDPS while in physical restraints and/or in an area of their respective correctional institutions lacking retrievable video surveillance images. [Id. at ¶ 40].

From January 1, 2008 to the present and continuing here from, Defendants Hooks, Guice, Lassiter, Beaver, Dye, and their predecessors have failed to adopt, promulgate, implement or maintain proper, meaningful or effective policies and procedures (1) to review and investigate allegations of excessive force or unlawful use of force within the NCDPS and Alexander and (2) to capture, record, retrieve or review video surveillance imagery through the correctional institutions of the NCDPS Division of Prisons and at Alexander. [Id. at ¶¶ 41-42]. Further, Defendants Hooks, Guice, Lassiter, Beaver, Dye, and Does #11 through #40 "failed to maintain complete or accurate records to track the use of justified or unjustified physical force used by their subordinates." [Id. at 43]. The failure to track the use of force within the NCDPS prisons and correctional institutions "caused and encouraged subordinate NCDPS correctional officers and employees, including Defendants Caldwell, Quinn, Clawson, and Does #2 through #10, "to commit acts of misconduct and use excessive force with impunity." [Id. at ¶ 43].

On the morning of March 21, 2017, Plaintiff was housed within the close custody general population of Alexander at Unit Blue North, JA Wing. [Id. at ¶ 44]. Plaintiff had a Call Out Pass to attend a mental health appointment. Plaintiff was escorted out of JA Wing by a medical orderly to attend the appointment. [Id. at ¶ 45]. After exiting the JA Wing, and while in the Blue North Rotunda, Plaintiff was involved in a physical altercation with a correctional officer. [Id. at ¶ 46]. Other correctional officers responded to the incident and Plaintiff was pepper sprayed, tackled to the ground, and handcuffs and leg shackles were applied. [Id.]. Plaintiff was then escorted, while in full restraints, by and under the control of over a dozen correctional officers and supervisors

3

from the Blue North Rotunda to the Restricted Housing Unit (RHU). [Id. at ¶ 49]. Upon entering the RHU, Plaintiff was taken to the RHU D-Wing by Defendants Quin, Caldwell, Clawson, and Does #2 through #10. [Id. at ¶ 50]. There are two wall-mounted video surveillance cameras within D-Wing of the RHU. The interior of the D-Wing lower tier shower is not within the view of the cameras, creating a "blind spot" in camera coverage, which is known to all staff and RHU prisoners. [Id. at ¶ 54].

Once inside D-Wing of the RHU, Plaintiff, still in full restraints, was placed in the D-Wing lower tier shower, at which time Defendant Quinn said, "do it quick." [Id. at ¶ 51]. Defendants Caldwell, Clawson, and Does #2 and #3 attacked Plaintiff and beat him in the presence of Defendant Quinn and one or more of Does #4 through #10. [Id.]. Defendants Caldwell, Clawson, and Does #2 and #3 punched, kicked, hit and struck Plaintiff multiple times. [Id. at ¶ 52].

Plaintiff claims his injuries include bruising and inflammation of his backside, extremities, and his neck, head, and face; laceration to the inside of his left cheek; and a traumatic brain injury/concussion. [Id. at ¶ 52]. Plaintiff seeks monetary, injunctive, and declaratory relief. [Id. at 15].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an

indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

Plaintiff asserts five claims in his Complaint: (1) excessive force in violation of the Eighth Amendment against Defendants Caldwell, Clawson, and Does #2 and #3; (2) "supervisory liability for failure to intervene in violation of the Eighth Amendment" against Defendants Quinn and Does #4 through #10; (3) "violation of the Eighth Amendment right to be free from cruel and unusual punishment" against Defendants Hooks, Guice, Lassiter, Dye, Beaver, Couch, Wallace, Hamilton, Clifton, Quinn, Caldwell, Clawson, and Does #2 through #40; (4) liability under the North Carolina Tort Claims Act against Defendant NCDPS for negligent training, supervision and retention of personnel; and (5) assault and battery under state law against Defendants Quinn, Caldwell, Clawson and Does #2 through #10. [See Doc. 13].

#### A. Eighth Amendment

The Plaintiff's Eighth Amendment claims, in substance, include claims for the use of excessive force, for the failure to protect/intervene, and for supervisory liability.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind.

Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996).

In excessive force claims, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, the Supreme Court has recently reiterated that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 559 U.S. 34, 38 (2010). In Wilkins v. Gaddy, the Supreme Court observed:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim.
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

Id. at 37-38 (citations omitted).

Here, taking Plaintiff's allegations as true and drawing all reasonable inferences therefrom, the Court finds that the Plaintiff has stated a claim against Defendants Caldwell, Clawson, and Does #2 and #3 for the use of excessive force in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

As for Plaintiff's claim labelled "supervisory liability for failure to intervene in violation of the Eighth Amendment," Plaintiff alleges that Defendant Quinn and Does #4 through #10 were

6

physically present when Plaintiff was beaten, and as either "uniformed correctional peace officers or uniformed supervisory correctional peace officers," failed to intervene in the use of excessive force on Plaintiff. [Doc. 13 at ¶¶ 71-72]. Despite its label, this claim is in substance one for failure to protect or to intervene under the Eighth Amendment. The negligent failure to protect an inmate from assaults by other prisoners, or by other prison guards, does not rise to the level of an unconstitutional violation. Davidson v. Cannon, 474 U.S. 344, 348 (1986). To show deliberate indifference, a plaintiff must allege that the prison official had actual knowledge of an excessive risk to the plaintiff's safety. Danser v. Stansberry, No. 13-1828, 2014 WL 2978541, at *5 (4th Cir. Sept. 12, 2014). In other words, the prison official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Further, a plaintiff sufficiently alleges a failure to intervene by a prison official where the plaintiff states that the official observed an altercation and failed to respond. Brown v. N.C. Dept. of Corrections, 612 F.3d 720, 723 (4th Cir. 2010). The Plaintiff has sufficiently alleged that Defendants Quinn and Does #4 through #10 failed to protect and failed to intervene in the attack on Plaintiff by the other correctional officers.

Plaintiff also asserts a general claim for "violation of the Eighth Amendment right to be free from cruel and unusual punishment" against Defendants Hooks, Guice, Lassiter, Dye, Beaver, Couch, Wallace, Hamilton, Clifton, Clawson, and Does #2 through #40. [Doc. 13 at ¶ 77]. It appears Plaintiff seeks to support this claim, in part, through the following allegations:

> 54. There were two (2) wall mounted video surveillance cameras within D-Wing of the Restricted Housing Unit. However, the interior of the D-wing lower tier shower is not within the view of the cameras creating a "blind spot" in the camera coverage which is known to all staff and RHU prisoners.
>
> 55. Defendants Hooks, Guice, Lassiter, Dye, Beaver, Couch, Wallace, Hamilton, Clifton and Does #11 through #40 were aware

7

> of a systemic problem within the NC-DPS, Division of Prisons wherein prisoners in full restraints were taken to areas of prisons with surveillance camera "blind spots" and were then attacked and beaten by prison staff members….
>
> 56. The Defendants identified in paragraph 55 *supra*. [*sic*], knew of the systemic use of excessive force from their review of lawsuits, grievance, complaints, incident reports, other documents and video surveillance from cameras in the vicinity of blind sports where prisoners were repeatedly taken to be beaten by staff while in full restraints. These Defendants were aware of the excessive risk of malicious and sadistic assaults created by the lack of video surveillance in blind spots at prisons within the Division of Prisons and they failed to take preventative or corrective action to halt the assaults. This caused and encouraged prison staff, including Defendants Caldwell, Quinn and Does #1 through #10 to use unjustified and excessive force with impunity.

[Doc. 13 at ¶¶ 54-56].

Supervisors are not liable in § 1983 actions merely by virtue of their status as supervisors of officials who have violated a prisoner's constitutional rights. See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978) (stating that under § 1983, liability is personal in nature, and the doctrine of respondeat superior does not apply). A supervisor, however, can be liable where (1) he knew that his subordinate "was engaged in conduct that posed a pervasive and unreasonable right of constitutional injury;" (2) his response showed "deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) that there was an "affirmative causal link between his inaction and the constitutional injury." Straw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (internal quotation marks omitted).

As for Defendant Quinn, Caldwell, Clawson, and Does #2 through #10, Plaintiff has not alleged any additional facts from which the Court can find a distinct Eighth Amendment claim unrelated to or separate from the Plaintiff's claim for the use of excessive force. As such, Plaintiff has not stated a separate claim against Defendants Quinn, Caldwell, Clawson, and Does #2 through

#10 under the Eighth Amendment based on cruel and unusual punishment.

As for Plaintiff's claim against Defendants Hooks, Guice, Lassiter, Dye, Couch, Wallace, Hamilton, Clifton, Clawson, and Does #11 through #40 based on his right under the Eighth Amendment to be free from cruel and unusual punishment, including any claim Plaintiff may be attempting to assert based on defective and/or inadequate policy [see Doc. 13 at ¶¶ 41-43], the Court finds these claims survive initial review in that they are not clearly frivolous.

As for Defendant Beaver, Plaintiff alleges that "Defendant Beaver is only named in his official capacity as the successor in office of the Superintendent of the Alexander Correctional Institution." [Doc. 13 at ¶ 39]. Plaintiff seeks only "prospective injunctive relief" from Defendant Beaver, not monetary relief. [Doc. 13 at ¶ 39]. As such, Defendant Beaver will remain a defendant in this lawsuit at this stage of the proceedings. See Monell v. New York City Dept. of Social Services, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38 (1978) (holding that in an official capacity suit, the entity's "policy or custom" must have played a part in the violation of federal law); Oklahoma City v. Tuttle, 471 U.S. 808, 818-20, 105 S. Ct. 2427, 2433-34 (1985) (discussing same).

### B. Assault and Battery

Plaintiff asserts state law claims for assault and battery against Defendants Quinn, Caldwell, Clawson, and Does #1 through #10 for their use of "physical force against the Plaintiff without need, provocation or lawful excuse." [Doc. 13 at ¶ 92]. Under North Carolina law, "[a]n assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow." Dickens v. Puryear, 302 N.C. 437, 444, 276 S.E.2d 325, 330 (1981).

Plaintiff's claims against Defendants Caldwell, Clawson, and Does #2 and #3 for assault

9

and battery survive initial review in that Plaintiff's claims are not clearly frivolous and this Court may exercise supplement jurisdiction over those claims. See 28 U.S.C. § 1367(a). As for Does #4 through #10, Plaintiff alleges only that these Doe Defendants were physically present while Plaintiff was beaten. Accordingly, Plaintiff has failed to state a claim for assault and battery against Does #4 through #10. As for Defendant Quinn, this is a closer call. Plaintiff alleges that Defendant Quinn was physically present at the time of the alleged attack and that Defendant Quinn told Defendants Caldwell, Clawson, and Does #2 and #3 to "do it quick." [Doc. 13 at ¶ 51]. Plaintiff, however, does not allege that Defendant Quinn struck the Plaintiff. Giving Plaintiff the benefit of every reasonable inference, the Court finds that Plaintiff has failed to state a claim against Defendant Quinn for battery, but that Plaintiff's claim against Defendant Quinn for assault survives initial review.

### C. North Carolina Tort Claims Act

Plaintiff asserts a claim against the NCDPS under the North Carolina Tort Claims Act ("the Act") based on alleged negligent training, supervision, and retention of personnel. Plaintiff alleges that "supervisory employees had a duty to train and supervise their subordinate employees and retain in employment only those subordinate employees who could perform their duties in a reasonable and prudent manner." [Doc. 13 at ¶ 84]. Plaintiff alleges these supervisory employees breached their duty to train and supervise their subordinate employees regarding the use of unnecessary or excessive use of force" and this breach "was the proximate case of injury or harm to the Plaintiff." [Id. at ¶ 85]. Further, although the supervisory employees knew the subordinate employees were not capable of performing their duties in a careful and prudent manner, the supervisory employees retained the subordinate employees and negligently caused injury or harm to Plaintiff. [Id. at ¶ 88].

This Court lacks jurisdiction to hear claims brought under the Act.

> Under the well-settled doctrine of sovereign immunity, a state may not be sued in its own courts or elsewhere unless by statute it has consented to be sued or has otherwise waived its immunity from suit. Likewise, an agency of the state may only be sued when it has authorized such suits by statute. Statutes constituting such waiver under North Carolina law must be strictly construed.

Oliver v. Baity, 208 F.Supp.3d 681, 693-94 (4th Cir. 2016) (internal quotation marks and citations omitted). Here, the statute language specifically confers jurisdiction over claims brought under the Act on the North Carolina Industrial Commission. See N.C. Gen. Stat. § 143-291(a) ("The North Carolina Industrial Commission is hereby constituted a court for the purpose of hearing and passing upon tort claims against … agencies of the State."). This Act requires that plaintiffs "who wish to sue the state for tortious acts must bring their claims before the North Carolina Industrial Commission, not the district court." Alston v. N.C. A & T State Univ., 304 F.Supp.2d 774, 783 (M.D.N.C. Feb. 6, 2004).

As such, Plaintiff's claim under the Act against Defendant NCDPS will be dismissed and NCDPS will be dismissed as a Defendant in this matter.

As to named Defendant FNU Hamilton, identified as a Captain at Alexander, Plaintiff makes no allegations whatsoever regarding and asserts no claims against Defendant Hamilton. Accordingly, Defendant Hamilton will be dismissed as a Defendant in this matter without prejudice.

Finally, the Court notes that John Doe claims are permissible only against "real, but unidentified, defendants." Schiff v. Kennedy, 691 F.2d 196, 197 (4th Cir. 1982). The designation of a John Doe defendant "is generally not favored in federal courts; it is appropriate only when the identity of the alleged defendant is not known at the time the complaint is filed and the plaintiff is likely to be able to identify the defendant after further discovery." Njoku v. Unknown Special

Unit Staff, 217 F.3d 840, 840 (4th Cir. 2000). Plaintiff has alleged, generally, how the named Doe Defendants were involved in the acts and omissions alleged in Plaintiff's Complaint. As such, the Court will allow these Defendants to remain named by their Doe designations at this time. Plaintiff, however, must move to amend the Complaint to substitute their real names when Plaintiff is able to identify them during discovery.

## IV. CONCLUSION

In sum, the Complaint survives initial review as to Defendants Hooks, Guice, Lassiter, Dye, Beaver, Couch, Wallace, Clifton, Quinn, Caldwell, Clawson, and Does #2 through #40 under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A. The Plaintiff's claim against Defendant NCDPS will be dismissed and the NCDPS and Defendant FNU Hamilton will be dismissed as Defendants in this matter.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Complaint [Doc. 1] survives initial review under § 1915(e) and 28 U.S.C. § 1915A as to Defendants Hooks, Guice, Lassiter, Dye, Beaver, Couch, Wallace, Clifton, Quinn, Caldwell, Clawson, and Does #2 through #40, but not as to Defendant Hamilton or Defendant NCDPS, who shall be dismissed from this action. The dismissal of Defendant Hamilton shall be without prejudice.

2. The Clerk is directed to mail 15 summons forms to Plaintiff for Plaintiff to fill out and identify Defendants Hooks, Guice, Lassiter, Dye, Beaver, Couch, Wallace, Clifton, Quinn, Caldwell, Clawson in the summonses for service of process, and then return the summonses to the Court. (The four (4) extra forms are for Plaintiff's future use in the event he identifies any Doe Defendants through discovery or otherwise.). Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service.

Once the Court receives the summonses from Plaintiff, the Clerk shall then direct the U.S. Marshal to effectuate service upon Defendants Hooks, Guice, Lassiter, Dye, Beaver, Couch, Wallace, Clifton, Quinn, Caldwell, Clawson.[2]

**IT IS SO ORDERED**.

Signed: November 14, 2019

Frank D. Whitney
Chief United States District Judge

---

[2] The Court notes that Local Civil Rule 4.3 does not govern the procedure for service of process in this matter because Plaintiff alleges, and it appears correctly, that he was and is not a North Carolina State prisoner, but rather a prisoner of the State of New Mexico who was temporarily housed in a North Carolina correctional facility. See N.C. Gen. Stat. § 148-119, et seq.