IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL CASE NO. 3:19-cv-00135-MR

MATTHEW JAMES GRIFFIN, )
)
         Plaintiff, )
)
vs. )
)
ERIK A. HOOKS, et al., ) **ORDER**
)
         Defendants. )
_____ )

**THIS MATTER** is before the Court *sua sponte*.

**I.**     **FACTUAL AND LEGAL BACKGROUND**

The *pro se* Plaintiff is a prisoner of the State of New Mexico currently serving a life sentence for first degree murder. He filed this action pursuant to 42 U.S.C. § 1983 against numerous prison officials related to events allegedly occurring while he was confined at Alexander Correctional Institution in Taylorsville, North Carolina. [Doc. 1]. At the time, Plaintiff was confined in North Carolina pursuant to an interstate corrections compact. He has since been transferred back to New Mexico and is currently incarcerated at the Penitentiary of New Mexico in Santa Fe, New Mexico, which is over 1,500 miles from this Court.

After granting several extensions of the dispositive motions deadline and denying Defendants' final request for more time [Doc. 149], the Court referred the case to the Honorable W. Carleton Metcalf, Magistrate Judge, for a judicial settlement conference [Doc. 153]. After some delay in the conduct of that proceeding, the parties reached an impasse. [3/22/2022 Docket Entry; see Doc. 155]. Thus, this matter is now ripe for trial.

Given Plaintiff's incarceration in New Mexico, the Court must consider options in conducting Plaintiff's trial. An incarcerated litigant in a § 1983 action does not have an absolute right to be physically present at the trial of his case. Muhammad v. Warden, Baltimore City Jail, 849 F.2d 107, 112 (4th Cir. 1988). "[I]f securing the prisoner's presence, at his own or public expense, is determined to be infeasible," the court must consider "other reasonably available alternatives." Edwards v. Logan, 38 F. Supp. 2d 463, 467 (W.D. Va. 1999) (citing Muhammad, 849 F.2d at 111, 113). In considering other reasonably available alternatives, the Court should consider the following factors:

(1) Whether the prisoner's presence will substantially further the resolution of the case, and whether alternative ways of proceeding, such as trial on depositions, offer an acceptable alternative.

(2) The expense and potential security risk entailed in transporting and holding the prisoner in custody for the duration of the trial.

2

> (3) The likelihood that a stay pending the prisoner's release will prejudice his opportunity to present his claim, or the defendant's right to a speedy resolution of the claim.

Id. at 113. The second factor includes the question of whether the Court has jurisdiction to order the law enforcement officials of another state (in this case, New Mexico) to deliver the Plaintiff to the Court for trial and/or whether such officials could maintain his detention or incarceration during such trial. "If, after balancing the factors set forth in Muhammad, the court finds that the costs and security concerns posed by the trial are too great, the court has the discretion to try the case without the plaintiff's attendance." Edwards, 38 F. Supp. 2d at 467. Other alternatives include Plaintiff's attendance through videoconferencing or, as noted, by deposition. Joyner v. Byington, No. 7:15-cv-00526, 2017 WL 807208 (W.D. Va. Mar. 1, 2017) (ordering attendance by videoconferencing); Edwards, 38 F.Supp.2d 463 (same); Clay v. Drew, 66 F.3d 315 (4th Cir. 1995) (affirming Plaintiff's attendance at trial by reading his deposition where he failed to appear after being ordered to pay expenses of transport). See Peterson v. Nadler, 452 F.2d 754, 756-57 (8th Cir. 1971) (trial on deposition preferable to indefinite stay).

The Court ordered the parties to address the foregoing factors and propose how they want the trial to proceed. [Doc. 162]. The Court specifically directed Plaintiff to address whether he can pay the costs, if any,

3

of any of the alternative(s) that he proposes. [Id.]. The Court also directed the parties to advise the Court whether officials at Plaintiff's place of incarceration are willing to assist with attendance by videoconferencing, if such alternative is proposed.

The parties responded to the Court's Order. [Docs. 165, 169]. In his response, Plaintiff asks the Court to appoint the North Carolina Prisoner Legal Services (NCPLS) to represent him for trial, to require Plaintiff's transport for trial at Defendants' expense, and to set an evidentiary hearing to address the manner and conduct of trial and the feasibility of Plaintiff's presence. [Doc. 165 at 17]. As grounds for this relief, Plaintiff cites that he has a serious vision impairment, that he is an indigent prisoner, that Defendants procured Plaintiff's absence from this District, and that trial by video of any type is not an acceptable substitute for live witnesses. [Id. at 2-5]. Plaintiff asserts that this Court "has discretion to order a prisoner produced in a civil case," and argues that "the jury must be able to see and hear Plaintiff and his witnesses in order to evaluate their credibility based upon their demeanor while testifying."[1] [Id. at 6-7]. Plaintiff contends that it

---

[1] Plaintiff states that his trial witnesses are prisoners and references 22 other prisoners he named in his Complaint, which he alleged were subject to misconduct similar to that experienced by Plaintiff. [Doc. 165 at 8 (citing Doc. 13 at ¶ 55)].

4

would be unfair to have Defendants' proof presented in person and Plaintiff's presented through video. [See id. at 5-8]. Plaintiff also argues he must be present "to manage the presentation of his proof, cross-examine adverse witnesses, present a rebuttal case to the Defendants [*sic*] evidence, object to improper evidence or arguments and give opening and closing arguments." [Id. at 7-8]. Plaintiff claims that because it was feasible to transport him to North Carolina in 2015 it is also feasible to transport him to North Carolina for trial. [Id. at 14]. Plaintiff, however, failed to address whether he can pay the cost of his transport as directed by the Court. [See Doc. 162 at n.2].

Defendants, on the other hand, argue that the trial in this matter should be proceed by video depositions.[2] [Doc. 169 at 2]. As grounds, Defendants argue that security risks, expense, and relative lack of meaningful effect of Plaintiff's presence on resolution of the case militate in favor of trial by video

---

[2] In support of their response, Defendants submit documents that were filed in Griffin v. Perry, Civil Case No. 1:04-cv-00654-MCA-WDS, Docs. 203, 203-1 to 203-6. These documents include a statement by Defendant Kitchens in that matter addressing why the Court should not permit the Plaintiff to appear personally at his trial and numerous exhibits reflecting Plaintiff's violent, threatening, calculating, opportunistic, and unpredictable behavior inside and outside of prison, including during prison transport. [Doc. 169-2 at 1-11]. These documents also include affidavits by two prosecutors who decided not to prosecute Plaintiff for crimes he committed in prison because he was "always considered to be extremely dangerous" and an "extreme security risk" who was "too dangerous to bring to court" and "it would be extremely expensive to put in place security measures to guard against Mr. Griffin's violent propensities." [Id. at 178-181].

deposition. [Id. at 4-8]. Defendants also reason that a stay of the proceedings pending Plaintiff's release is untenable given Plaintiff's life sentence. [Id. at 8]. Counsel for Defendants contacted the New Mexico Corrections Department and has been advised that the facility where Plaintiff is housed would be able to accommodate an Order from this Court requiring the matter to proceed by the presentation of video depositions or videoconferencing. [Id. at 9-10].

Defendants contend that transport of Plaintiff from New Mexico to North Carolina for trial would not be feasible from a financial, logistical, and security perspective. [Id. at 6]. As to security risks attendant to Plaintiff's transport for trial, Defendants point to Plaintiff's crimes of conviction, his numerous transfers to high-security state facilities, his conviction for numerous assaults on prison employees while incarcerated, and his proclivity for and skill at fashioning weapons out of household objects and then hiding them on his person and attacking people when the opportunity presents. [Doc. 169 at 5-6]. Plaintiff was convicted of and is serving a life sentence for first degree murder, armed robbery with a deadly weapon, aggravated burglary, and tampering with evidence. Since his conviction in 1991, Plaintiff has been transferred to high-security facilities in Oklahoma, Nevada, New Mexico, Minnesota, California, Virginia, and North Carolina.

Plaintiff has been transferred in and out of these various institutions, at least in part, because of his behavior in prison. For instance, Plaintiff seriously maimed a New Mexico prison guard with a razor blade attached to a string on his molar that Plaintiff had swallowed and then regurgitated. Although housed in North Carolina for only a short time, Plaintiff was found guilty of numerous infractions, including weapons possession, assaulting staff, threatening to harm, fighting, and refusing to submit, among other things. [Doc. 169 at 5; see Doc. 169-1 at 1-7, Doc. 169-2 at 5].

With 15 Defendants in this action and multiple claims, Defendants argue that a trial may last more than a week. Beyond the expense of transporting Plaintiff to North Carolina, housing Plaintiff in an appropriate facility and transporting him daily to the courthouse would entail significant cost. Plaintiff's transport here may also very well bring additional litigation. [Doc. 169 at 6-7]. Plaintiff is a prodigious filer of lawsuits, including three other lawsuits against prison officials arising out of alleged events during his short time in North Carolina, including one action arising out of events during transport. Griffin v. Daves, Civil Case No. 5:19-ct-03040-M (transport); Griffin v. Bryant, Civil Case No. 5:17-ct-03173-M; Griffin v. Hollar, Civil Case No. 5:19-cv-00049-MR.

7

Defendants also argue that Plaintiff's presence at trial would not further the resolution of the case more than trial by deposition or video conference. Defendants note that many of the named Defendants are or were senior North Carolina Department of Public Safety (NCDPS) officials with whom Plaintiff never interacted and argue that Plaintiff would be able to question any witnesses or Defendants just as effectively by video deposition as in person. [Doc. 169 at 7-8].

## II. ANALYSIS

As a threshold matter, the Court looks at whether it has the authority to issue a writ ordering New Mexico officials to release Plaintiff for a trial in this matter. District courts are authorized to issue writs of habeas corpus ad testificandum for prisoners when necessary to bring them to court to testify or for trial. See 28 U.S.C. § 2241(c)(5). This authority is not territorially limited. Mohammed, 849 F.2d at 114 (citing Carbo v. United States, 364 U.S. 611, 81 S.Ct. 338 (1961)); ITEL Capital Corp. v. Dennis Min. Supply and Equipment, Inc., 651 F.2d 405, 406-7 (5th Cir. 1981) (citing Carbo). Historically, however, "the U.S. Marshals and state law enforcement have periodically disagreed over who is to bear the burdens and costs of prisoner transportation in such instances." Williams v. Beauregard Parish, No. 2:08-cv-355, 2014 WL 1030042, at *1 (W.D. La. Mar. 17, 2014). According to the

Fifth Circuit, once a district court determines that a prisoner's presence is essential, such disagreements or lack of transportation funds or personnel do not justify refusal to issue the writ. See Ballard v. Spradley, 557 F.2d 476, 481 (5th Cir. 1977). District courts, however, are not empowered to order the U.S. Marshals Service, when neither a custodian of the prisoner nor a party to the litigation, to bear the cost of producing the prisoner in federal court, even if only from the local jail to a nearby federal courthouse. Pennsylvania Bureau of Correction v. U.S. Marshals Service, 474 U.S. 34, 106 S.Ct. 355 (1985). In accord with Ballard, however, it appears that such authority rests, at least in part, on the Court's determination that the prisoner's presence is "essential."

Although the Court has some limited authority to order Plaintiff's transport here from New Mexico, and notwithstanding who would bear the cost for such transfer, the question remains whether it should. As noted, Mohammed guides the Court's decision here. The Court must consider: (1) Whether Petitioner's presence will substantially further the resolution of the case, and whether alternative ways of proceeding, such as trial on depositions, offer an acceptable alternative (i.e., whether Plaintiff's presence is essential); (2) the expense and potential security risk entailed in transporting and holding Petitioner in custody for the duration of the trial; and

(3) the likelihood that a stay pending the Petitioner's release will prejudice his opportunity to present his claim, or Defendants' right to a speedy resolution of the claim. Id. at 113. These factors weigh heavily against ordering Petitioner's presence for trial. Plaintiff's physical presence at the trial will not substantially further resolution of this case any more than alternative means of presenting evidence. Plaintiff argues that he must be present to in the courtroom "to manage presentation of the case." [Doc. 165 at 8]. If this matter proceeded by video depositions, however, the Court would plan the presentation of the evidence submitted by both parties in advance and administer it during the trial after hearing the parties' arguments and preferences therefore at the pretrial conference.

As to the second Mohammed factor, the expense and security risk of transporting Plaintiff and holding him in North Carolina for the duration of the trial are self-evident. Plaintiff is currently incarcerated over 1,500 miles from this District. Plaintiff argues that because he was transferred to North Carolina once he can be transported there again for trial. While technically true, this logic ignores the practical realities of the situation. Plaintiff has been transferred in and out of high-security facilities all over the country throughout his over 30-year incarceration in significant part due to and as a means to diffuse the impact of his violent and extreme behavior. Requiring

10

Case 3:19-cv-00135-MR   Document 172   Filed 08/02/22   Page 10 of 14

taxpayers to bear the expense of Plaintiff's transport to a trial that arose out of one such transfer is of questionable prudence.  Moreover, Plaintiff failed to advise the Court whether he can pay for his transport.

Much more concerning than the financial hurdle of Plaintiff's presence at trial are the substantial security risks attendant to his transport and maintenance in this District during trial.  Plaintiff has proven himself to be a great and serious threat to those around him both in and outside of prison walls.  He calculates and strategizes, waiting for the perfect moment to attack his unsuspecting victims.[3]  Of course, security measures necessary to mitigate these risks would necessarily be elaborate and expensive and Plaintiff has shown it nearly impossible to mitigate all reasonable risk.

As to the final <u>Mohammed</u> factor, a stay in this matter is not tenable. While Plaintiff does not address this factor, Defendants provide that Plaintiff's life sentence consists of a term of imprisonment of 30 years plus an additional 50 years, which means release in or around 2071.  Plaintiff was born in 1963 and would be 108 years old on his release.  [<u>See</u> <u>Griffin v. Hollar</u>, Civil Case No. 5:19-cv-00049-MR, Doc. 89-12 at 2].  Plaintiff's opportunity to present his claim would undoubtedly be prejudiced as would

---

[3] The documents provided by Defendants in support of their response are replete with support for this conclusion and are not susceptible to summary here.  [<u>See</u> Docs. 169, 169-1, & 169-2].

11

Defendants' right to a speedy resolution of the claims by a stay pending Plaintiff's release.

Given all these considerations, the Court will order that the trial in this matter proceed by video deposition of all the parties' witnesses. Plaintiff's deposition shall be narrative in form and will be admissible pursuant to Federal Rule of Civil Procedure 32(a)(4)(c) due to Plaintiff's imprisonment. The other depositions taken in this matter for trial will be admissible pursuant to Rule 32(a)(4)(e). The Court will allow the parties six (6) months from this Order to complete these depositions. The depositions are *de bene esse* depositions, not discovery depositions, and they shall be recorded on video. The Federal Rules of Evidence and this Court's Local Civil Rules govern the conduct of these depositions. All objections to the substance and/or admissibility of any testimony or evidence offered in these depositions shall be stated and preserved on the record as if the testimony were offered at trial. Once the depositions are completed, the Court will conduct a pretrial conference at which time it will consider any objections to deposition testimony and motions in limine. The exact logistics of trial will be determined by the Court as this matter progresses.[4]

---

[4] The parties should anticipate that, after completion of the pretrial conference, they will have the opportunity to submit opening and closing statements by video, subject to objections and modification. The Court anticipates that the parties will submit to the Court

Defendants shall bear all costs of conducting the video depositions for Defendants' witnesses. Plaintiff shall, to the extent he has any resources, pay the cost of the video depositions of his witnesses and Defendants shall pay the balance of these costs.

The situation in its entirety is of course not ideal. The Court, however, informed by its experience through the COVID-19 pandemic, is assured that alternative means of accomplishing its purpose and objectives are often as efficacious and purposeful as traditional means. Moreover, the Court cannot make this decision in a vacuum. The Court cannot in good conscience order Plaintiff's presence at the trial in this matter in the face of the attendant risks and considerations, particularly where trial by video deposition offers a suitable and reasonable alternative.

## III. CONCLUSION

For the foregoing reasons, the trial in this matter will proceed for all parties by video depositions of all witnesses in accordance with the terms of this Order. Additional details regarding the conduct of trial will be timely provided.

**ORDER**

---

any "for cause" questions to be posed by the Court at jury selection.

**IT IS, THEREFORE, ORDERED** that the parties shall have six (6) months from this Order to complete the depositions of their trial witnesses in accordance with the terms of this Order, including the cost provisions set forth above.

**IT IS FURTHER ORDERED** that counsel for Defendants shall work with the New Mexico Corrections Department and the Penitentiary of New Mexico as necessary to ensure compliance with this Order.

**IT IS SO ORDERED**.

Signed: August 1, 2022

_____
Martin Reidinger
Chief United States District Judge