# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL CASE NO. 3:19-cv-00135-MR

| | | |
|---|---|---|
| MATTHEW JAMES GRIFFIN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| ERIK A. HOOKS, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Evidentiary Hearing and for Appointment of Counsel [Doc. 184], the reserved portion of Plaintiff's "Motion for an Order to Require Defendants Counsel to Schedule, Notice, and Pay for Depositions" [Doc. 186], and the parties' Responses to the Court's April 24, 2023 Order [Doc. 189], [Docs. 191, 194, 200].

## I.    BACKGROUND

The *pro se* Plaintiff is a prisoner of the State of New Mexico currently serving a life sentence for first degree murder.  He filed this action pursuant to 42 U.S.C. § 1983 against numerous prison officials based on an alleged excessive use of force on March 21, 2017, at Alexander Correctional Institution in Taylorsville, North Carolina, and on allegedly unconstitutional

North Carolina Department of Public Safety (NCDPS)[1] policies and procedures that promote the use of excessive force against restrained prisoners in areas of North Carolina prisons that lack video coverage. [Doc. 1]. At the time, Plaintiff was confined in North Carolina pursuant to an interstate corrections compact. He was later transferred back to New Mexico and then to Illinois. He is now incarcerated at the Lawrence Correctional Center in Sumner, Illinois, in Administration Detention (AD). This matter is now ripe for trial. To that end, the Court ordered that the trial in this matter be conducted by video depositions in accordance with the terms of the Court's Order. [Doc. 172]. In March 2023, Plaintiff filed his witness list for trial, which included 48 witnesses, including himself, the 15 remaining Defendants, 23 prisoner witnesses, nine prison officials and/or healthcare providers, and one expert witness, James Evans Aiken. [Doc. 181].

A week later, Plaintiff filed a motion for an evidentiary hearing "to address prison officials' ongoing obstruction of the trial by video deposition process and the need to appoint counsel," and alternative request for him and his witnesses to be transported to the courthouse for trial. [Doc. 184 at 1-2]. In this motion, Plaintiff takes issue with various aspects of the Court's

---

[1] The NCDPS has been renamed the North Carolina Department of Adult Corrections. The Court, however, will refer to it as the NCDPS in conformity with the Plaintiff's filings.

Order requiring the trial in this matter be conducted by video depositions.[2] Plaintiff argues that the Court's Order requiring the trial to be conducted by video deposition is unenforceable in Illinois because it "requires nothing of Illinois or its prison officials." [Id. at 2-3]. Plaintiff argues that his attendance at trial may be lawfully procured only by a writ directed at Plaintiff's lawful custodian. [Id. at 5-6]. Plaintiff asserts that Illinois prison officials are actively obstructing Plaintiff's efforts to take trial depositions, claiming that Illinois prison officials have confiscated Plaintiff's Petitions for Writs of Habeas Corpus Ad Testificandum ("trial writs") for the Plaintiff and his prisoner witnesses. [Id. at 6-7]. Plaintiff also claims that Illinois prison officials have confiscated the video camera images from discovery in this case, preventing Plaintiff from using relevant footage during the trial depositions. [Id. at 9]. Plaintiff also claims that prison officials have confiscated Plaintiff's Federal Rules of Evidence, hindering Plaintiff's preparation for trial depositions and filing of motions and briefs related to expert witnesses. [Id. at 9-10]. Plaintiff also reminds the Court that he has been diagnosed with a serious vision impairment and claims that he is disabled within the meaning of the

---

[2] Plaintiff also renews a previously denied Motion to Set the Conditions Upon Which Depositions are Conducted at the Prison. [Doc. 184 at 11-12 (citing Doc. 136)]. The Court will deny this motion as moot given the orders and instructions herein and in previous Orders of this Court.

3

Americans with Disabilities Act (ADA).  [Id. at 13].  Plaintiff contends that the United States District Court is required to provide him with a reading assistant at the video trial depositions as an ADA accommodation "to make the trial process accessible to him."  [Id.].

Plaintiff also contends that "Illinois is not set up for" a trial by video deposition. [Doc. 184 at 15].  Plaintiff states that, as an AD inmate, he would be in full restraints, "seated in a chair, his leg chains secured to an eye-bolt on the floor, no desk or writing surface, another chair 3 ½ - 4 feet away, with a lap top computer sitting open on that chair."  Plaintiff argues that, "[i]t all adds up to a mistrial," and that he should be transferred back to New Mexico for use of the prisons' "state-of-the-art video court rooms" and designated staff legal assistants.  [Id. at 15-16].

On April 24, 2023, before further addressing these issues, the Court required defense counsel to investigate and/or inquire about certain matters, as follows:

(1)    The location and status of Plaintiff's allegedly confiscated materials as set forth above, including the reason(s) for their confiscation and whether they have been returned to Plaintiff;

(2)    Any policy or procedures regarding or governing the conduct and/or conditions of trial depositions at Plaintiff's correctional

facility, including such policies applicable to AD inmates and the facility's policy regarding Plaintiff-initiated phone calls to defense counsel to plan and coordinate trial depositions;

(3) The identity of the official or officials with authority to facilitate and/or execute the conduct of the trial depositions in this matter;

(4) The availability of a case worker, assistant, or other staff to aid Plaintiff in the trial process in this matter, particularly relative to Plaintiff's vision impairment, and any procedures incident to engaging such worker for Plaintiff; and

(5) Any other matters or issues raised by defense counsel's investigation of these matters.

[Doc. 189 at 5-6].

In this Order, the Court also addressed Plaintiff's motion to order defense counsel to schedule, notice, and pay for the depositions of Plaintiff's 48 witnesses [Doc. 186]. Plaintiff claimed that the 21 of the prisoner witnesses will testify regarding having been subjected to excessive force at Alexander and Central Prison in Raleigh, North Carolina, and that the remaining two, Health Rice and Thomas Reddick, will testify regarding the

alleged excessive force used against Plaintiff.[3] [Doc. 181 at 14-25]. In its Order, the Court addressed Plaintiff's motion as it related to the 15 Defendants, nine prison officials and/or health care providers, and Mr. Aiken.[4] [See Doc. 189 at 9-10, 12-13]. As to the 23 prisoner witnesses, the Court ordered the parties to provide more information to the Court within 14 days, as follows:

(1)     Defense counsel shall provide these witnesses' current locations or addresses, if known; whether they are still incarcerated; and, if so, their release dates;

(2)     Plaintiff shall state what he knows of each witness' knowledge of the facts and circumstances surrounding this lawsuit and willingness to testify regarding the matters at issue and whether Plaintiff is personally acquainted with the witness.

---

[3] With his Witness List, Plaintiff included Witness Statements prepared by Rice and Reddick on April 4, 2017, in which they describe witnessing certain aspects of the alleged use of force incident. [Doc. 181-1 at 44, 46].

[4] As previously noted in this case [Doc. 189 at 3 n.4], Mr. Aiken served as an expert witness in Corbett v. Branker, Civil Case No. 5:13-ct-3201-BO filed in the Eastern District of North Carolina. In that action, Mr. Aiken prepared an expert report, which included several "examples of use of force incidents that represent some of the deficiencies." [See Doc. 181-1 at 65-75]. These examples involve eight of Plaintiff's 23 purported prisoner witnesses. [See id. & Doc. 181 at 14-25]. The Court, however, noted that Plaintiff failed to demonstrate "that he has secured or retained Mr. Aiken to testify as an expert in this case" and, therefore, denied Plaintiff's motion to require defense counsel to notice and schedule Mr. Aiken's deposition in this case. [Doc. 189 at 8, 10].

6

[Id. at 11]. The Court also ordered the Plaintiff to provide his most recent trust account statement for ruling on the Plaintiff's motion for Defendants to pay for the trial video depositions. [Id. at 13].

Defendants responded to the Court's Order within the original deadline. [Doc. 191]. Defense counsel reported that, due to Plaintiff's large quantity of legal materials, his excess materials are stored outside but in the same wing as his cell. Plaintiff nonetheless has access to these materials.[5] Defense counsel reported that some of Plaintiff's USB drives were confiscated as containing potential contraband when Plaintiff arrived at his current facility. Illinois Department of Corrections legal counsel advised defense counsel that any videos Plaintiff needs can be sent "to him" (presumably legal counsel) and will be made available to the Plaintiff. [Id. at 3]. Defense counsel reported that Plaintiff's current facility does not have any policies on conducting depositions and that defense counsel was provided a facility contact to set up phone calls with the Plaintiff. Defense counsel was advised that "someone at the facility" would be available to help with the video equipment for the trial depositions, including any technical issues arising with the video, and he was provided contact information for an

_____

[5] It is unclear whether the "legal materials" referenced by defense counsel includes Plaintiff's allegedly confiscated Federal Rules of Evidence or trial writs.

individual who would assist in scheduling the depositions. Defense counsel also reported that the Illinois Department of Corrections does not provide litigation assistance and that Plaintiff "has been added to a waitlist to see an eye doctor to determine the extent of his vision disability and then a determination can be made whether he needs reasonable accommodation." [Id. at 4-5]. Finally, defense counsel provided information for each of Plaintiff's purported 23 prisoner witnesses, including, where available, their OPUS numbers, whether they are still in NCDAC custody, and whether they have an "imminent release date." [Id. at 5-6]. Defense counsel, however, did not provide the correctional facilities at which the identifiable, incarcerated witnesses are currently housed. [See id.].

On May 15, 2023, the Court received Plaintiff's "Partial Response" to the Court's Order in which Plaintiff provides information regarding his 23 prisoner witnesses. [Doc. 194]. Plaintiff reports that he "has no information that suggests any of his 23 prisoner witnesses are even aware that he filed a civil rights complaint." [Id. at 3]. Plaintiff reports that his "pre-filing investigation" revealed these witnesses as having been "beaten while in restraints at various North Carolina prisons where there was a lack of video coverage or lack of retrievable video." [Id.]. Plaintiff further reports that "[e]ach of the 23 prisoner witnesses indicated during their interview that they

would be willing to tell their story to a judge or jury, or they already have (eg., [*sic*] by testifying or filing a declaration in federal court)."  [Id. at 4]. Plaintiff does not state what "interview" he is referring to.  [See id.].

After the Court allowed Plaintiff two extensions of time to respond, Plaintiff filed a "Second Response" on July 2, 2023.  [See Doc. 200 at 1; see Docs. 192, 198; 5/12/2023 & 6/6/2023 Docket Entries].  In this response, Plaintiff included gratuitous objections to the Defendants' response; additional argument regarding his request for a reading assistant; a demand for the Court to "explain[ ] to the vision impaired Plaintiff how he is to put his trial evidence into the record;" a request that the Court hold a pre-trial conference before video depositions begin;[6] a request that the Court order Defendants to file a witness list and proposed jury instructions; an objection to the Court's 6/17/2022 Text Order denying Plaintiff an extension of time to respond to Defendants' response to a Show Cause Order that "did not contemplate or allow any replies to the parties' respective responses to such Order;" and an objection to a footnote in the Court's Order at Docket No. 189 advising Plaintiff that he may taxed depositions costs in this matter if

---

[6] Plaintiff wants the Court "to address which witnesses will be allowed at trial, stipulations (if any), and preliminarily which jury instructions will be given." [Doc. 200 at 14].  Plaintiff specifically requests "a written ruling on each of his Proposed Jury Instructions," which he filed in May 2019.  [Id. at 14 (citing Doc. 11)].

9

Defendants prevail at trial. [Doc. 200]. Plaintiff also advises that the Illinois Special Operations Response Team (SORT) destroyed "Plaintiff's use of force file in this case" and that he "will file a limited motion to Re-open Discovery to replace his pre-trial use of force investigation in this case."[7] [Id. at 24-25]. Finally, Plaintiff provides his recent prisoner trust account statement. [Doc. 193]. The Court will address the pending motions and other matters, as necessary and appropriate.

## II. Plaintiff's Prisoner Witnesses

Of Plaintiff's 23 proposed prisoner witnesses, defense counsel reports that nine remain incarcerated without an imminent release date, four are no longer in NCDPS custody, and 10 cannot be identified or located with the information provided by Plaintiff. [Doc. 191 at 5-6]. As noted, Plaintiff claims these witnesses have previously been "beaten while in restraints" in areas of North Carolina prisons lacking video coverage. Plaintiff does not believe that any of them are aware of Plaintiff's lawsuit, but asserts that they have all, at some point, indicated a "willing[ness] to tell their story." Plaintiff does not separately address Heath Rice or Thomas Reddick in this regard. While some of these witnesses may be willing to provide testimony that might ultimately prove favorable to Plaintiff's case, without more than Plaintiff's

---

[7] No such motion has been forthcoming.

speculation, the Court cannot sanction the fishing expedition Plaintiff proposes here, particularly within the constraints incident to Plaintiff's and these witnesses' positions as incarcerated individuals. A federal trial cannot be conducted by guesswork and wishful thinking. What Plaintiff proposes is, in substance, to take <u>discovery</u> depositions of these persons, without even having information as to whether they are "persons with knowledge." The Court, therefore, will not order defense counsel to coordinate, notice, or pay for the video depositions of these witnesses.

## III.    Plaintiff's Vision Impairment

Citing no authority, Plaintiff asserts that he "<u>must</u> be provided a reading assistant [for the video depositions] or this case will be reversed on appeal." [Doc. 200 at 6 (emphasis in original)]. Neither the Americans with Disability Act (ADA), 42 U.S.C. § 12101, <u>et</u> <u>seq.</u>, nor the Rehabilitation Act of 1973 (Rehab Act), 29 U.S.C. § 791, <u>et</u> <u>seq.</u>, apply to the federal judiciary. <u>See</u> <u>Patrick v. United States Postal Service</u>, No. CV-10-0650-PHX-ECV, 2010 WL 4879161, at *1-*3 (D. Ariz. Nov. 23, 2010) (finding that neither the ADA nor Rehab Act require a federal district court to provide for an ASL interpreter for a hearing-impaired plaintiff); <u>Torrence v. U.S. Bankruptcy Court for the Northern District of Illinois</u>, No. 17 C 3120, 2017 WL 3593116, at *3-*4 (N.D. Ill. Aug. 21, 2017) (dismissing hearing-impaired plaintiff's ADA and Rehab

Act claims against a United States Bankruptcy Court for allegedly failing to accommodate her disability because these provisions do not apply to federal courts); United States v. Wishart, 146 F. App'x 171, 172-73 (9th Cir. 2005) (affirming criminal defendant's conviction on direct appeal where he claimed the district court failed to accommodate his ADA disabilities, noting, "[b]y definition, the ADA does not apply to the federal government").

The Court must also look to the Guide to Judiciary Policy (the "Guide"), which is published by the Administrative Office of the United States Courts and provides guidance on the day-to-day operations of the Judiciary.  The Guide includes "guidance on the use of interpreters for participants in judicial proceedings who speak only or primarily a language other than English, or who are hearing-impaired or have communication disabilities."  The Guide, Vol. 5, Ch. 1, § 110.  It provides that "[i]nterpreter services needed to assist parties in civil proceedings not instituted by the United States, both in-court and out-of-court, are the responsibility of the parties to the action, except as noted above in § 210 through § 255."  Id., Ch. 2, § 260.  Pursuant to § 255, "a court **must** provide sign language interpreters or other auxiliary aids to participants in federal judicial proceedings who are deaf, hearing impaired, or have communication disabilities."  Id., Ch. 2, § 255(a).  However, there is no comparable directive related to vision-impaired participants.  Since this

action was not instituted by the United States and because Plaintiff is vision-impaired – not hearing-impaired – the Guide does not require the Court to engage these services for the Plaintiff.

Even assuming that Plaintiff has a vision impairment, the Plaintiff has presented nothing to support his bare conclusory assertion that his impairment will preclude his taking the video depositions in this matter without a reading assistant.[8]  Plaintiff has prepared and filed an extraordinary number of documents in this case and has over 20 boxes of legal materials, presumably relevant to his past and present litigation in this Court and others, that were transported for him from New Mexico.  Plaintiff has also demonstrated an extraordinary ability to organize, reference, and cross-reference his extensive filings and the Court's Orders in this case, as well as filings and documents in other cases.  Nonetheless, if Plaintiff feels he needs a reading assistant at the video depositions in this matter and if the Illinois Department of Corrections will not provide one for him, it is his responsibility and burden to secure one.

---

[8] The Court notes that Assistant Attorney General J. Locke Milholland, who regularly appears in this Court defending cases of this nature, is blind.  History has repeatedly shown that blindless and lesser vision impairments do not prevent one from presenting one's case in court.

### III. Trial Location and Evidence

Plaintiff continues to argue that he should be transported back to New Mexico for trial.  This Court has no authority to order such a transfer.  Nor does the Court have authority to order an Illinois prison to modify its security policies for AD prisoners in their custody for a video deposition or otherwise. All the Court can do is request that the Illinois prison officials consider what security measures and level of restraint are actually necessary to maintain the safety of anyone involved in the video deposition process here, including the Plaintiff. As such, Plaintiff will remain in Illinois for the conduct of this trial by video depositions and will be subject to the security policies and procedures of his correctional facility.

Plaintiff also demands that the Court provide him with explicit instructions about "how he is to put his trial evidence into the record" at the video trial depositions in this matter because the Court "has substantially deviated from the ordinary jury trial process in this case." [Doc. 200 at 13]. While trial by video deposition is uncommon, it is a well-accepted alternative in logistically complicated prisoner cases.[9]  Nonetheless, the Court advises and orders the parties in this regard as follows:

---

[9] Moreover, the presentation of de bene esse depositions at an ordinary jury trial is a common practice.

A.     The video deposition shall proceed as a typical discovery deposition would. However, any objections to testimony or evidence, whether as to form or substance, shall be stated on the record, including any grounds for the objections, so that the Court can later rule on any unresolved objections and exclude any testimony or evidence as appropriate before the depositions are presented to the jury.

B.     The parties shall clearly and consecutively mark all exhibits to the deposition testimony beginning with the first witness deposed so that there is a master trial exhibit notebook to be submitted to the Court on completion of the video depositions. That is, for example, the first exhibit used and marked in the first deposition, if any, shall appear in the master exhibit notebook only once and subsequently referenced by the parties as "Trial Exhibit 1." Defense counsel is responsible for maintaining a master trial notebook of all trial exhibits used during the video depositions, submitting a copy of such notebook to the Court at the conclusion of the video depositions, and providing a copy of the exhibits therein to the Plaintiff.

15

C.    Defense counsel shall ensure that Plaintiff has access to and use of any video evidence in this matter at the video depositions.

D.    As least ten (10) days prior to the first scheduled video deposition, the parties shall: (1) File a list of any exhibits they intend to use at the video depositions and (2) agree upon stipulations of fact and file them with the Court. (The parties are encouraged to stipulate to as many facts as possible to facilitate the trial of the case.)

E.    If Defendants intend to conduct any video depositions of witnesses not already requested by Plaintiff and addressed by the Court, Defendants must file a witness list at least fourteen (14) days prior to the beginning of the first deposition.

F.    Should the need for testimony of additional, unanticipated witnesses arise through or after the initial depositions, the parties may so advise the Court and the Court will determine whether to allow these additional depositions.

## IV.    Other Matters

Plaintiff asks the Court to hold a "pre-trial conference" before the conduct of the video trial depositions "to address which witnesses will be allowed at trial, stipulations (if any), and preliminarily which jury instructions

16

will be given." [Doc. 200 at 14]. Plaintiff specifically requests "a written ruling on each of his Proposed Jury Instructions," which he filed in May 2019. [Id. at 14 (citing Doc. 11)]. The Court will deny this request. The Court already advised the parties that it would conduct a pretrial conference after the depositions are complete to, among other things, consider any objections to deposition testimony and motions in limine. [Doc. 172 at 12]. Moreover, the Court has herein addressed stipulations and the witnesses that will be allowed at trial so far as currently available information allows. The Court declines to address or make any determinations relative to jury instructions at this time. Jury instructions are not reviewed between the Court and the parties until after the close of evidence at trial. There would be little purpose in preliminarily discussing jury instructions before the Court and the parties know what the evidence at trial has shown.

On May 15, 2023, Plaintiff filed his most recent prison trust account statement with the Court. [Doc. 193 at 6-8]. Plaintiff's average monthly deposits for the six months preceding the statement was $272.89[10] and Plaintiff's average monthly balance during that period was $93.87. [Doc. 193

---

[10] It appears that Plaintiff's relative, Mary Griffin, is the primary source of the deposits to Plaintiff's trust account. [See Doc. 193 at 6-8].

at 5].  Plaintiff's balance as of April 28, 2023, was $0.72.[11]  [Id. at 8].  Plaintiff, therefore, has shown that he is currently unable to pay in full the cost of trial video depositions in this matter.  [See Docs. 194, 200 at 2].  Plaintiff has also shown, however, that he consistently receives relatively substantial deposits to his account that are used primarily for the prison commissary and library and legal expenses.  [See Doc. 193 at 6-8].  Accordingly, the Court will grant the reserved portion of Plaintiff's motion [Doc. 186] in that the Court will order Defendants to pay for the trial video depositions allowed by the Court in this matter, subject to Plaintiff repaying these costs to the Defendants at a rate of $15.00 per month beginning the first day of the month after the trial depositions are complete.  The Court will order the Defendants to file on the record the information Plaintiff needs to repay the cost of these trial depositions.  Plaintiff is again admonished that he may be taxed with other costs in this matter if Defendants prevail at trial.

As to Plaintiff's allegedly confiscated trial writs, there is currently no need for them.  Plaintiff has not shown that his 23 prisoner witnesses can, will, or should testify in this matter and Plaintiff himself is not being transported anywhere to testify.  Even if any other prisoner witnesses were

---

[11] Plaintiff has since reported that, as of July 2, 2023, his account balance was $0.17.  [See Doc. 200 at 2].

to testify, they would likely do so without being transported from their current facilities. As to Plaintiff's allegedly confiscated Federal Rules of Evidence, the information currently before the Court reflects that, while Plaintiff may not have these Rules inside his cell, he has access to them, along with all his legal materials stored in his wing. It also appears that Plaintiff's Rules may have been removed from his cell because facility rules rightfully preclude Plaintiff from maintaining all his abundant legal materials inside his cell. Plaintiff would be well advised to assess whether he might exchange the Rules for other materials to which he does not need immediate access.

To the extent Plaintiff is being wholly denied access to his Federal Rules of Evidence, the Court will direct that a copy of this Order be mailed to the Warden at Plaintiff's facility to ensure he is not being improperly denied access to this resource or any other necessary legal materials.

Having considered and addressed the remaining issues raised in Plaintiff's motion for evidentiary hearing, the Court will deny it. As for Plaintiff's request for appointment of counsel therein, it will also be denied. While the logistics of conducting a trial in this matter are not ideal, Plaintiff has consistently demonstrated his ability to prosecute this action. The Court has previously addressed Plaintiff's request for Court-appointed counsel and denies this request for the same reasons.

## V.    CONCLUSION

For the foregoing reasons, the Court will deny Plaintiff's motion for an evidentiary hearing and request for appointment of counsel therein and grant in part Plaintiff's motion to require Defendants to pay for the video trial depositions in this matter as set forth in this Order.   Any relief sought by Plaintiff not expressly allowed herein is denied.

As previously ordered [Doc. 189 at 9, 12-13], defense counsel shall schedule and notice the trial depositions of the Plaintiff and Defendants Quinn, Caldwell, and Clawson; and the parties shall report to the Court within fourteen (14) days of the conclusion of these depositions regarding the need for the trial depositions of the remaining Defendants or any other witnesses in this matter.   The Court will order that the video depositions ordered herein be conducted within 60 days of this Order.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for Evidentiary Hearing and Appointment of Counsel [Doc. 184] is **DENIED** in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that the reserved portion of Plaintiff's Motion for an Order to Require Defendants Counsel to Schedule, Notice, and

Pay for Depositions [Doc. 186] is **DENIED in part** and **GRANTED in part** in accordance with the terms of this Order.

**IT IS FURTHER ORDERED** that Plaintiff shall **REPAY** the Defendants the cost of the video trial depositions that Plaintiff requests and as allowed by the Court at a rate of $15.00 per month beginning the first day of the month following the conclusion of such depositions.

**IT IS FURTHER ORDERED** that Defendants shall **FILE** within fourteen (14) days of this Order the information Plaintiff needs to complete such payments.

**IT IS FURTHER ORDERED** that the parties shall **CONDUCT** the video trial depositions of the Plaintiff and Defendants Quinn, Caldwell, and Clawson in accordance with the terms of this Order and as set forth in Docket No. 189 within sixty (60) days of this Order and report to the Court within fourteen (14) days of their conclusion regarding the need for the trial depositions of the remaining Defendants or other witnesses.

The Clerk is respectfully instructed to send a copy of this Order by certified mail to the Warden at Plaintiff's current correctional facility who is respectfully referred to pages 18 to 19 herein.

**IT IS SO ORDERED**.

Signed: August 29, 2023

Martin Reidinger
Chief United States District Judge