# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL CASE NO. 3:19-cv-00135-MR

MATTHEW JAMES GRIFFIN,        )
                              )
            Plaintiff,        )
                              )
vs.                           )        <u>ORDER</u>
                              )
                              )
ERIK A. HOOKS, et al.,        )
                              )
            Defendants.       )
_____ )

**THIS MATTER** is before the Court on Plaintiff's Motion for Entry of
Default [Doc. 223], Plaintiff's motions to take additional video trial depositions
[Docs. 234-243], Plaintiff's motion for an extension of time to report to the
Court regarding the need for additional video trial depositions [Doc. 233], and
Defendant's Motion for Extension of Time to File Mast[er] Trial Notebook
[Doc. 244].

The *pro se* Plaintiff is a prisoner of the State of New Mexico currently
serving a life sentence for first degree murder.  He filed this action pursuant
to 42 U.S.C. § 1983 against numerous prison officials based on an alleged
use of excessive force on March 21, 2017, at Alexander Correctional
Institution ("Alexander CI") in Taylorsville, North Carolina, and on the North

Carolina Department of Public Safety's (NCDPS)[1] alleged failure to adopt or maintain policies and procedures to review, track, and investigate prisoners' claims of the use of excessive force by prison officials, the absence of which promotes the use of excessive force against restrained prisoners in areas of North Carolina prisons that lack video coverage. [Docs. 1, 13]. For relief, Plaintiff seeks monetary and unidentified injunctive relief. [Id. at 15].

At the time of his Complaint, Plaintiff was confined in North Carolina pursuant to an interstate corrections compact. He was later transferred back to New Mexico and then to Illinois. He is now incarcerated in Administrative Detention (AD) at the Lawrence Correctional Center ("Lawrence CC") in Sumner, Illinois.[2] This matter is now ripe for trial. To that end, the Court ordered that the trial in this matter be conducted by video depositions in accordance with the terms of the Court's Order. [Doc. 172]. For the sake of economy, the Court hereby incorporates by reference its previous Orders in this matter, particularly those at Docket Nos. 172, 189, 202, and 224 regarding the conduct of the trial in this matter by video trial depositions.

---

[1] The NCDPS is now referred to as the North Carolina Department of Adult Corrections (NCDAC). The Court will refer to these entities interchangeably as context dictates.

[2] Because Plaintiff has been transferred to an Illinois prison, the Court will dismiss his claim for unidentified injunctive relief as moot. See Incumaa v. Ozmint, 507 F.3d 281, 286-87 (4th Cir. 2007).

2

Plaintiff has previously moved the Court to order defense counsel to schedule, notice, and pay for the video trial depositions of 48 witnesses in this case, including himself, the 15 Defendants, and 32 non-party witnesses, including 23 North Carolina prisoners, nine prison officials and/or healthcare providers, and one expert witness. [Doc. 186]. As for the prisoner witnesses, Plaintiff claimed they had previously been "beaten while in restraints" in areas of North Carolina prisons lacking video coverage, but acknowledged they were likely unaware of Plaintiff's lawsuit. [Doc. 194 at 3-4].

The Court addressed each witness requested by the Plaintiff and ordered that defense counsel must schedule and notice the video trial depositions of the Plaintiff and Defendants Quinn, Caldwell, and Clawson and that, within 14 days of the conclusion of these depositions, the parties must report to the Court regarding the need for the depositions of the remaining Defendants. [Doc. 189 at 9]. The Court ordered that, while Defendants were required to pay for the costs of the video trial depositions allowed in this matter, Plaintiff was required to repay Defendants for these costs at a rate of $15 per month. [Doc. 202 at 18, 21]. The Court denied Plaintiff's motion relative to each of the remaining non-Defendant witnesses, holding as follows.

> The Court will deny Plaintiff's motion as to former Defendants Hamilton and Bentley. It appears

that Hamilton and Bentley's testimony would be redundant of the testimony offered by the remaining Defendants at trial and, therefore, unnecessary.

The Court will deny Plaintiff's motion as to Darlene Upchurch and Amy Larosa without prejudice. Defendants can and should stipulate to the authenticity of any relevant, authentic medical records. The Court will also deny Plaintiff's motion as to Dr. Kalinski and FNP Gamewell, assuming Defendants' stipulation to the authenticity of Plaintiff's medical records such that Plaintiff can testify regarding his own injuries, evaluation, diagnosis, and treatment as reflected in his medical records. The Court will also deny Plaintiff's motion as to Sarah D. Wilson.  Plaintiff has failed to show that Ms. Wilson's testimony is necessary or relevant to this proceeding.  The Court will deny Plaintiff's motion as to Percy Myers, MD.  Plaintiff can testify regarding his own medical history, pre-existing injuries, and ongoing medical care and treatment, as may be relevant to this proceeding.

…

While some of [the prisoner] witnesses may be willing to provide testimony that might ultimately prove favorable to Plaintiff's case, without more than Plaintiff's speculation, the Court cannot sanction the fishing expedition Plaintiff proposes here, particularly within the constraints incident to Plaintiff's and these witnesses' positions as incarcerated individuals.  A federal trial cannot be conducted by guesswork and wishful thinking.  What Plaintiff proposes is, in substance, to take <u>discovery</u> depositions of these persons, without even having information as to whether they are "persons with knowledge."

[Id. at 9-10; Doc. 202 at 10-11].   Thereafter, Plaintiff filed hundreds of pages of purported trial exhibits, the vast majority of which are wholly irrelevant to this action.  [See Docs. 205, 208-211].

On November 21, 2023, Plaintiff again moved the Court to allow him to take the video trial depositions of the same 48 witnesses Plaintiff listed on his "Witness List" in March 2023 "for the reasons stated therein."  [Doc. 215; see Doc. 181].   The Court denied the motion, noting that it had "already addressed Plaintiff's request to depose these individuals" and that "Plaintiff present[ed] nothing counseling a different result."  [Doc. 224 at 7].  The Court warned Plaintiff as follows:

> Plaintiff is strongly admonished against raising any matters previously addressed by the Court absent a substantial change in circumstances.  The Court's decisions will not change simply because the theoretical has become reality. **Any future such motion may be summarily denied**.

[Id. (emphasis added)].

On December 18, 2023, Plaintiff moved for entry of default against Defendants Caldwell and Quinn "for twice failing to comply with Orders to appear and sit for their video depositions" and against "the other named Defendants, except Defendant Clawson," who had appeared for his scheduled video trial deposition.  [Doc. 223 at 1-2, 5].  Before this motion, Defendants had twice sought and been granted an extension of time to

5

complete the video trial depositions of Defendants Quinn, Caldwell, and Clawson due to various difficulties encountered in attempting to complete them. [Docs. 214, 222; 11/14/2023 & 12/14/2023 Text Orders]. On January 26, 2024, defense counsel reported that the video trial depositions of the Plaintiff and Defendants Clawson, Quinn, and Caldwell had been timely completed and that he did not believe that any additional trial depositions were needed.[3]    [Doc. 232].    Because the video trial depositions of Defendants Clawson and Quinn were completed within the deadline as extended (and because Plaintiff states no grounds in support of an entry of default against the other Defendants), the Court will deny Plaintiff's motion for entry of default.

Plaintiff now moves the Court for an order allowing him to take the video trial depositions of many of the witnesses previously denied by the Court, including all remaining Defendants; former Defendant Leslie Bentley; prisoner witnesses Thomas Reddick, Heath Rice, Tijuan Michael Wilson, Samuel McRae, John L. Davis, Austin R. Pittman, Jamol Dixon, Joseph Steepleton, and Sammy Ussery; NCDAC medical records custodian Amy

---

[3] On January 29, 2024, Plaintiff moved for a 14-day extension of time to report to the Court regarding the need for additional trial depositions. [Doc. 233]. The Court will grant this motion and construe Plaintiff's pending motions [Docs. 234-43] as satisfying the Court's order to so report.

Larosa; NCDAC healthcare providers LPN Wilson, Nurse Practitioner Gamewell, and Marta Kalinski, MD; and Percy Myers, MD, Plaintiff's physician at Lawrence Correctional Center.[4]  [Docs. 234-43].  The Court will address each witness below.

## A.    Larosa, Kalinski, Myers, Wilson, and Gamewell

As to Amy Larosa, Plaintiff argues that "[n]o stipulations were reached" between the parties and Larosa "is a necessary witness to authenticate medical records at trial."  [Doc. 236 at 3-4].  Plaintiff lists the records he believes he needs authenticated for trial. [Id. at 2-3].  Before the Court rules on Plaintiff's motion to conduct Larosa's deposition, the Court will require Defendants to indicate whether they stipulate to the authenticity of these records and, if not, to explain in detail why they refuse to so stipulate.

The Court will deny Plaintiff's motions as to Dr. Kalinski and Dr. Myers for the same reasons as before.  [See Doc. 189 at 10].  As to LPN Wilson, Plaintiff now states that she performed the use of force examination and Restrictive Housing Unit (RHU) screening on the Plaintiff on March 21, 2017. [Doc. 240 at 3].  Plaintiff contends that the records for the assessments,

---

[4] Plaintiff does not assert in any of these motions whether he is willing or able to pay for the video trial depositions of these witnesses.  [See id.].  As such, the Court will assume here that Plaintiff moves the Court to order Defendants to notice, schedule, and pay for the requested video trial depositions, subject to the Court's Order [Doc. 202] requiring Plaintiff to repay the costs of any such depositions.

which occurred within minutes of each other, "are different" and "[b]oth fail to record injuries … to Plaintiff's head and face … that were visible in video trial exhibits." [5]  [Id.].  Plaintiff also contends that NP Gamewell "approved the written use of force evaluation which fails to record visible head/facial injuries shown in video trial Exhibits" and that she and LPN Wilson "made a conscious effort to minimize the documented injuries to Plaintiff."  [Id. at 5]. Plaintiff claims that LPN Wilson repeatedly moved a wheeled health care monitor to block the video camera from showing Plaintiff's injuries.  [Id.].

The Court will again deny Plaintiff's motion to take the video trial depositions of LPN Wilson and NP Gamewell.  There is no allegation that LPN Wilson's assessment of Plaintiff on March 17, 2017 is relevant to whether Plaintiff was subjected to excessive force that day.  While the extent of Plaintiff's injuries may go to damages if the jury were to find Defendants used excessive force on him, there is no reason to believe LPN Wilson would testify that she not only remembers the degree of injury suffered by Plaintiff seven years ago but also actively minimized the documentation of such injuries.  Moreover, while Plaintiff claims that LPN Wilson attempted to

---

[5] LPN Wilson recorded in the Use of Force Evaluation that Plaintiff complained that "[t]he right side of [his] face hurts."  [Doc. 208 at 72].  LPN Wilson documented "[s]light redness and swelling noted to sinus area[,] [n]o open area noted[,] … [and that Plaintiff] denies any other injuries[.]"  [Id. at 73].  LPN Wilson "[s]poke to Gamewell, NP [and a] facial X-ray [was] ordered."  In the Restrictive Housing Screening, LPN Wilson recorded that Plaintiff was angry, "[a]ppear[ed] in pain" and had "visible injury."  [Id. at 76].

prevent Plaintiff's injuries from being video recorded, he also contends that they were, in fact, so recorded. Plaintiff's argument relative to NP Gamewell is entirely speculative and will not be sanctioned. Again, Plaintiff may testify regarding his own injuries and, to the extent relevant, his contention that the documentation does not reflect their full extent.

## B. Defendants Hooks, Guice, Lassiter, Dye, Beaver, Couch, Wallace, Joyner, Young, and Clifton

In his Complaint, Plaintiff alleged that Defendants Hooks, Guice, Lassiter, Beaver, and Dye had final policymaking authority "before, during and after March 21, 2017" within the NCDPS and Alexander.[6] [Doc. 13 at 5]. Plaintiff alleged that Defendants Hooks, Guice, Lassiter, Dye, Beaver, Couch, Wallace, Clifton, Joyner, and Young "were aware of a systemic problem within the NC-DPS … wherein prisoners in full restraints were taken to areas of prisons with surveillance camera 'blind spots' and were then attacked and beaten by prison staff members" and "failed to take preventive corrective action to halt the assaults." [Id. at 9]. Plaintiff further alleged that

---

[6] Plaintiff further alleged that Defendant Dye was the acting Superintendent at Alexander on the day of the incident and that Defendant Beaver succeeded Defendant Dye as Superintendent sometime after the incident. Plaintiff named Defendant Beaver as a Defendant in his official capacity only "as the successor in office of the Superintendent of Alexander." [Doc. 13 at 6]. Plaintiff's claim against Defendant Beaver survived initial review because Plaintiff sought only "prospective injunctive relief" from Defendant Beaver. Because Plaintiff has been transferred away from North Carolina and the Court will, therefore, dismiss Plaintiff's claim for injunctive relief, the Court will dismiss Defendant Beaver as a Defendant in this matter.

this failure "caused and encouraged prison staff," including Defendants Caldwell, Clawson, Quinn, Bryan, and Daves and former Defendant Leslie Bentley "to use unjustified and excessive force with impunity," including on Plaintiff on March 21, 2017.  [Id. at 9-10].

Plaintiff argues that he needs to take the video trial deposition of Defendant Dye because Plaintiff first reported the alleged use of excessive force to Defendant Dye the day of the incident and, on March 22, 2017, Defendant Dye "changed the use of force policy."[7]  [Doc. 235 at 2, 5].  Plaintiff contends he needs to question Defendant Dye regarding "his acts and omissions in this matter, the feasibility of precaution, the execissive [*sic*] use of force, systemic deficiencies regarding the tracking of use of force and measure[s] to prevent or identify the excessive use of force[.]"  [Id. at 6].

As for Defendant Clifton, Plaintiff states that Defendant Clifton was the Office-in-Charge (OIC) on March 21, 2017; that Defendant Clifton ordered Plaintiff be taken to the RHU where Plaintiff was subsequently beaten in the shower area; that Defendant Clifton appears in the video footage of Plaintiff reporting the alleged use of excessive force to Defendant Dye; and that Defendant Clifton conducted the use of force investigation "underlying this

---

[7] Plaintiff does not state what changes were allegedly made to this Policy on March 22, 2017.  [See Doc. 235 at 5].

lawsuit," which included taking statements from 24 responding staff "none of whom reported hitting, punching[,] kicking or striking Plaintiff in the head or face during the initial incident on Blue-North."  [Doc. 239].  In this regard, Plaintiff argues that, because none of the prison staff responding to Plaintiff's attack on Correctional Officer Xawooth Vue reported "hitting, punching[,] kicking or striking" Plaintiff in the head or face at that time, then his "head and facial injuries necessarily occurred [in] the Restricted Housing unit shower."  [Id. at 4].

Before the Court rules on Plaintiff's motions relative to these Defendants, the Court will require Defendants to identify which Defendant or Defendants have the most knowledge regarding, are the policymakers charged with creating and implementing, and/or have the ability or authority to effectuate changes to NCDPS polices and procedures, particularly relative to the tracking of incidents of use of excessive force by prison officials on North Carolina prisoners at the time of the incident giving rise to Plaintiff's Complaint.  In identifying such Defendant(s), Defendants are instructed to meaningfully consider Plaintiff's allegations on this issue and cautioned that their failure to adequately and transparently respond to this Order may result in the Court ordering them to pay the cost of these or any additional video

trial depositions needed as a result of such failure or the imposition of other appropriate sanction(s).

### C. Leslie Bentley[8] and Defendants Bryan and Daves

In his pending motion, Plaintiff states that he testified as follows in his video trial deposition:

> [O]n March 21, 2017 he was beaten while handcuffed in the lower D-Wing shower by Mr. Bentley, and Defendants Daves, Caldwell and Bryan while Defendant Quinn stood watch at the shower door; the beating ended when Defendant Clawson said, Admin on the Unit and Defendant Quinn said come out of there…. [Plaintiff] was struck with the shield (a weapon) and then beaten while handcuffed and kicked once after he fell to the floor in the D-Wing shower.

[Doc. 237 at 3, 6]. Plaintiff argues that he needs to take the video trial depositions of Bentley and Defendants Bryan and Daves because Defendants Quinn and Caldwell testified that Bentley pinned Plaintiff against the shower wall with a shield and because Defendant Quinn "identified" Bentley and Defendants Caldwell and Bryan as being inside the shower and Defendant Daves as standing at the shower door during the incident. [Doc. 237 at 2-3]. Both Quinn and Caldwell testified that Plaintiff "was not beaten

---

[8] The Court dismissed Leslie Bentley as a Defendant in this matter after Plaintiff failed to timely take action to prosecute this action against him. [Doc. 148].

in the Restricted Housing Unit lower tier shower on March 21, 2017."[9]  [Doc. 234 at 2].

The Court will deny Plaintiff's motion to require Defendants to notice, schedule, and pay for the video trial depositions of Bentley and Defendants Bryan and Daves.  The Incident Report, which Plaintiff included with his trial exhibits, describes the involvement of these witnesses in the incident.  [See Doc. 205 at 17-23].  All officers present in the shower area, including Leslie Bentley and Defendants Bryan, Quinn, Caldwell, and Daves,[10] reported that, after Plaintiff disobeyed multiple orders to remain facing the wall, Bentley used a shield to secure Plaintiff against the wall so that the other officers could safely leave the shower.  The officers reported that once Bentley used the shield, Plaintiff complied, and the officers exited the shower.  [Id. at 19-20, 22, 27].

There is no reason to believe that the testimony of Bentley or Defendants Bryan or Daves would vary from these reports made soon after the incident, particularly given the corroborative testimony by Defendants

---

[9] Plaintiff reports that Defendant Clawson "did not recall March 21, 2017."  [Doc. 237 at 2; Doc. 234 at 3].

[10] Plaintiff alleged that Defendant Clawson "attack[ed] and beat" him in the shower, but he now seems to contend that Defendant Clawson stood watch with Defendant Quinn.  [See Doc. 237 at 3].  Regardless, the Incident Report does not reflect that Defendant Clawson escorted Plaintiff to the shower area or was otherwise involved in the incident.  [See Doc. 205 at 23, 27, 58].

13

Quinn and Caldwell. Moreover, defense counsel does not believe any additional trial depositions are necessary because Plaintiff "has been able to give his version of events" and Defendants Clawson, Quinn, and Caldwell have testified "regarding the allegations that they used excessive force against Plaintiff." [Doc. 232 at 3]. If anything, the depositions of these additional witnesses would only further undercut Plaintiff's claim that he was subjected to excessive force in the RHU shower on March 21, 2017. As such, the Court will deny Plaintiff's motion as to these individuals. If Plaintiff wants to notice, schedule, and pay for the cost of these video trial depositions on his own, the Court will allow him the opportunity to do so.

### D. Prisoner Witnesses

#### 1. Thomas Reddick and Heath Rice[11]

Plaintiff argues that the video trial depositions of Thomas Reddick and Heath Rice are necessary because (1) Defendants Quinn and Caldwell testified that Plaintiff was not beaten in the shower area and Defendant Clawson did not remember March 21, 2017; (2) Reddick and Rice "witnessed the attack upon Plaintiff" and gave statements regarding what they saw; and (3) both Reddick and Rice told the Plaintiff after the alleged assault that they

---

[11] Thomas Reddick, Offender No. 0338217, remains incarcerated at Alexander, and Heath Rice, Offender No. 0563945, is currently incarcerated at Central Prison in Raleigh, North Carolina.

14

would testify on his behalf. [Doc. 234 at 1-5]. Plaintiff submitted the written statements of Reddick and Rice with his motion. [Doc. 234-1 at 2, 6].

In his statement, which was recorded on April 4, 2017, Reddick states that he was standing at his cell door in the RHU when Plaintiff was brought to the shower area by "about 5 staff." Reddick says he saw two of the staff "hit inmate Griffin up beside the head and the Sgt. that was with them told the officer to come out of the shower area." [Doc. 234-1 at 2]. Rice, who also provided a statement on April 4, 2017, said that he saw Plaintiff "brought in by [the] side door of D Block" with "his eyes & face wet with some type of liquid," which Rice later learned was pepper spray. Rice reported that Plaintiff was left in the shower for over 30 minutes restrained behind his back and his legs shackled, but he was not decontaminated at that time. Rice further reported that Plaintiff was removed from the shower, taken to another cell for approximately 15 to 20 minutes where he was examined by nursing staff, and brought back to the shower area for decontamination, where he was shoved inside. Rice "heard 'thumping around' but had no door visual" and did not see which officers were in there with the Plaintiff. Rice "later learned" from Plaintiff that Plaintiff "was 'struck about the head & face' when shoved into showers." [Id. at 6].

15

Based on the foregoing, the Court will order that Defendants notice, schedule, and pay for the cost of the video trial deposition of Thomas Reddick, subject to Plaintiff's repaying these costs in accordance with the previous Order of this Court.[12]  [See Doc. 202 at 18, 21].  The Court, however, will deny Plaintiff's motion as to Heath Rice.  At best, Mr. Rice heard "thumping around" in the shower area.  Contrary to Plaintiff's claim, Mr. Rice did not witness the attack on Plaintiff.  He did not see who was in the shower with Plaintiff or what happened.  The Court will not order the Defendants to coordinate and pay for Mr. Rice's trial video deposition under these circumstances.

## 2.    The Other Prisoner Witnesses

Plaintiff also asks the Court to order that Defendants notice, schedule, and pay for the video trial depositions of seven other prisoner witnesses, including Tijaun Michael Wilson, Samuel McCrae, John L. Davis, Austin R. Pittman, Jamol Dixon, Joseph Steepleton, and Sammy Ussery.  [Doc. 243]. As grounds, Plaintiff states that (1) these prisoners "were beaten while in restraints by North Carolina Prison Officials at North Carolina States

---

[12] Plaintiff is cautioned that, depending on how many trial video depositions it orders Defendants to notice, schedule, and pay, the Court will likely modify the terms of its previous Order regarding repayment and increase the total monthly payment due to Defendants.  [See Doc. 202 at 18, 21].

Prisons.;" (2) these prisoners are "locatable and available to testify;" (3) Plaintiff is prohibited from corresponding with these witnesses; (4) Defendant Quinn "testified that North Carolina had no statewide data tracking system designed to track the use of force or excessive use of force" by correctional officers in North Carolina prisons; (5) Plaintiff testified that such failure "caused or contributed to the excessive use of force against [Plaintiff] on March 21, 2017;" and, thus, (6) these witnesses "have relevant evidence, they may testify to a habit, routine or practice and they may also be called to establish intent, opportunity, preparation, plan, knowledge and absence of mistake or lack of accident." [Doc. 243 at 1-3, 5]. Plaintiff contends that these witnesses would testify consistent with declarations they gave in a previous action[13] in which Defendant Lassiter, among others, was sued and "agreed to settle multiple excessive use of force claims brought by North Carolina prisoners," including Tijuan Michael Wilson, Samuel McCrae, and John L. Davis. [Id. at 7-8, 11-12]. Alternatively, Plaintiff asks that the declarations "of any unavailable prisoner witness" be read to the jury and the attached medical records admitted into evidence. [Doc. 243 at 2, 10; see Doc. 181 at 1-42].

---

[13] As noted previously in this matter, these declarations appear to have originated in Corbett v. Branker, Civil Case No. 5:13-ct-3201-BO, filed in the Eastern District of North Carolina. [See Doc. 243 at 11-12].

The Court will deny Plaintiff's motion regarding these witnesses. Plaintiff previously reported to the Court that he "[had] no information that suggests any of [these] prisoner witnesses are even aware" of his Complaint, but they had all, at some point, indicated a "willing[ness] to tell their story." [See Doc. 194 at 3-4]. As previously ordered, the Court "cannot sanction the fishing expedition Plaintiff proposes here," which is, "in substance, to take discovery depositions of these persons, without even having information as to whether they are 'persons with knowledge.'" [See Doc. 202 at 10-11]. Plaintiff presents nothing here to mitigate the Court's concerns regarding these proposed witnesses. Plaintiff may, at the pretrial conference in this matter, renew his request to have the declarations "of any unavailable prisoner witness" read to the jury.[14]

Ordinarily a prisoner-litigant is responsible for all of the costs associated with prosecuting his case. The Court has been extremely lenient with the Plaintiff in allowing some mechanism by which he can present his case even though transporting Plaintiff to this venue for trial is not feasible due to Plaintiff's particular security considerations. Notwithstanding the

---

[14] Plaintiff is admonished that he must submit a single, cohesive document setting forth any evidence he wants read into the record at the trial in this matter and the grounds therefore. He cannot sprinkle these requests throughout his many submissions to the Court in this matter.

18

Court's accommodations, the Plaintiff appears to be determined to test the Court's leniency at every turn. Plaintiff is allowed to "depose now – pay later" with regard to the evidence central to this case. Plaintiff, however, repeatedly has sought to ruminate in all directions, searching for evidence that may or may not be relevant or admissible – all at someone else's expense. From this point forward, with the exception of the deposition of Thomas Reddick, and as otherwise set forth herein, any further depositions or discovery of any kind must be taken at Plaintiff's expense, and paid for by the Plaintiff in advance, except as may be supported by extraordinary circumstances. This case has been pending nearly five years, regarding incidents alleged to have occurred seven years ago. To the extent that Plaintiff has not yet figured out who the central people-with-knowledge are, particularly after countless rounds of motions regarding depositions and discovery, it is unlikely that the Plaintiff will ever be satisfied. This matter needs to draw to a conclusion.

## ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's Motion for an Extension of Time to Report to the Court [Doc. 233] is **GRANTED**; Plaintiff's Motion [Doc. 234] is **GRANTED IN PART** and **DENIED IN PART** in accordance with the terms of this Order; Plaintiff's Motions [Docs. 237, 238, 240, 243] are

**DENIED**; and the Court **RESERVES** ruling on Docs. 235, 236, 239, 241, and 242 in accordance with the terms of this Order.

 **IT IS FURTHER ORDERED** that Defendants shall **REPORT** to the Court within 14 days of this Order as follows:

 (1) Whether they stipulate to the authenticity of the Plaintiff's NCDAC medical records as further set forth in this Order.  If Defendants so stipulate, they shall **FILE** such stipulation within 14 days of this Order.  If Defendants do not so stipulate, they shall **EXPLAIN** to the Court in detail the reason for such refusal.

 (2) The identity of the Defendant or Defendants with the most knowledge regarding Plaintiff's policy claim as further set forth in this Order.

 **IT IS FURTHER ORDERED** that Plaintiff's Motion for Entry of Default [Doc. 223] is **DENIED**.

 **IT IS FURTHER ORDERED** that Defendants' Motion for an Extension of Time to File Master Trial Notebook [Doc. 244] is **GRANTED** and Defendants shall have ten (10) days from receipt of the final transcript of the trial video depositions in this matter to **MANUALLY FILE** a copy of the Master Trial Notebook with the Court and **SERVE** a copy of such notebook on the Plaintiff.

**IT IS FURTHER ORDERED** that Kenneth A. Beaver is hereby **DISMISSED** as a Defendant in this matter.

The Clerk is respectfully instructed to update the docket in this matter to reflect the true full name of Defendant FNU Clifton as Chad E. Clifton and Defendant FNU Quinn as Joshua T. Quinn.

The Clerk is also respectfully instructed to send a copy of this Order by certified mail to the Warden at Lawrence Correctional Center so that he or she remains apprised of the status of the conduct of these video trial depositions.

**IT IS SO ORDERED**.

Signed: March 18, 2024

Martin Reidinger
Chief United States District Judge